LOUIS WACKSMUTH v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 15 November, 1911.)

1. Appeal and Error—Objections and Exceptions—Answers of Witness—Evidence—Motion to Strike Out—Procedure.

If an answer by the witness to a competent question is not excepted to, the competency of the answer will not be considered on appeal under an exception noted to the question. The objecting party should either have excepted to the answer at the time it was made or move the trial judge to strike it from the evidence.

2. Railroads—Negligence—Relief Department—Acceptance of Benefits—Written Contract—Parol Evidence.

The word "benefits" as ordinarily used in the regulations of a railroad company's relief department does not include hospital treatment and medical attention; and as it is the acceptance by a member of that department of the benefits thereunder which may, in proper cases, bar his recovery for damages for a personal injury negligently inflicted by the company, and as the act of acceptance, when in dispute, is not included in any part of the written contract embraced in the regulations, it may be shown or disproved by parol evidence of the circumstances connected with it.

3. Railroads—Negligence—Relief Department—Acceptance of Benefits—Contracts—Evidence.

When in defense to an action for damages for personal injuries inflicted upon an employee, a railroad company relies upon the acceptance of benefits by the employee as a member of its relief department as a bar under the rules and regulations of the department, it is competent for the plaintiff, as tending to avoid the bar, to show that he had accepted the benefits under the assurance of the defendant that it would do certain things in regard to keeping him as an employee, etc., which it had failed to do, and that, relying on this promise, he had accepted the

benefits; and evidence in this case *Held* sufficient to sustain a verdict in plaintiff's favor on the issue as to whether the plaintiff, after his injury, voluntarily accepted the benefits under his contract.

4. Appeal and Error—Instructions—Presumptions.

When the charge of the trial court is not set out in the record on appeal it is assumed that he fully explained to the jury the significance of an issue submitted and the bearing of the evidence thereon.

5. Railroads—Negligence—Relief Department—Acceptance of Benefits—Promise—Contracts—Burden of Proof—Evidence—Questions for Jury.

It is a voluntary acceptance by an employee, a member of a railroad company's relief department, of the benefits of that department, after an injury has been inflicted, that bars his right to recover damages from the company; and when the defense in the action is that the plaintiff had promised to accept the benefits, it is necessary for the defendant to show an acceptance of the promise and its performance thereof in order to render the defense available. *King v. R. R., post*, 44, cited as controlling.

6. Railroads—Negligence—Relief Department—Acceptance of Benefits—Equity—Credits on Judgment—Procedure.

As the plaintiff in this case has accepted the benefits of the defendant's relief department, and under the circumstances is permitted to recover, he should return the amount so received, as he properly offered to do, and it is ordered that the amount he has received be credited to the defendant company upon the judgment rendered.

CLARK, C. J., concurs in result.

APPEAL by defendant from *Whedbee, J.,* at June Special Term, 1911, of EDGECOMBE.

This is an action to recover damages for personal injuries caused, as the plaintiff alleges, by the negligence of the defendant.

The defendant denies negligence, alleges that the plaintiff was guilty of contributory negligence, and specially pleads, as a defense, that the plaintiff was a member of its relief department, and that after his injury he accepted benefits from the department.

There was evidence that the plaintiff was injured on 18 April, 1904, in a collision, while performing his duty for the defendant as engineer, and without fault on his part.

It was admitted that after his injury, four checks, aggregating $155, were sent to him from the relief department as benefits.

The plaintiff did not collect the money on the checks, and on 29 August, 1904, wrote a letter to the superintendent of defendant, containing the following proposition:

"If you, as the proper representative of the A. C. L., will give me steady work at a salary of $4.50 per day and I to be employed in the shops at Rocky Mount and to break in new engines and such other similar work that will not require me to make long runs or do service at night, and give me further guarantee that I shall remain in the above employment for a term of not less than fifteen years at a salary of not less than $4.50 per day, steady time, and with the further privilege of returning to my regular run or daylight run, going out of Rocky Mount, whenever my physical condition will admit of the same, I will release the A. C. L. from any further claims for damages resulting from the above-named accident. It being agreed that you are to allow me also the amount agreed to in your letter of 1 August, and the amount that I am entitled to from the relief department."

The superintendent replied, inviting the plaintiff to Wilmington, and saying: "I think it is better for us to talk over the matter about which you have written."

The plaintiff testified that he went to Wilmington and saw the superintendent, and that he agreed to give him employment and to look out and care for him, and that in consequence of these promises he collected the checks.

There was evidence to the contrary.

The defendant offered evidence tending to show that it had contributed to the relief department, but no issue was submitted or requested on this question.

The rules and regulations of the relief department are fully stated in *Barden v. R. R.,* 152 N. C., 318, and in *King v. R. R., post,* 44, and *Nelson v. R. R., post.*

WACKSMUTH *v.* R. R.

There was evidence tending to prove negligence.

The jury returned the following verdict:

1. Did the plaintiff voluntarily become a member of the relief department of defendant and execute the agreement introduced in evidence? Answer: Yes.

2. Did the plaintiff, after his alleged injury, accept benefits under said contract, and if so, in what amount? Answer: Yes, $155.

3. Was the plaintiff induced to cash the relief checks and accept benefits under said contract, upon the promise and agreement of defendant to furnish him such work or employment as he might thereafter be able to perform, and to take care of him as an old employee? Answer: Yes.

4. If so, did the defendant comply with its agreements? Answer: No.

5. Was the plaintiff injured by the negligence of the defendant company? Answer: Yes.

6. Did the plaintiff, by his negligence, contribute to his own injury? Answer: No.

7. What damage is plaintiff entitled to recover of defendant? Answer: $7,500.

There was a judgment in favor of the plaintiff, and the defendant excepted, assigning the following errors:

*First exception.* For that the court erred in allowing the plaintiff, in answer to question of plaintiff's counsel, "How much did you suffer?" over the defendant's objection, to answer, "Suffered all kinds of troubles with doctors, thinking they were doing justice by me; kept telling me I would be all right, and I was continually having trouble."

This exception is upon the ground that both question and answer are improper and incompetent and should have been excluded.

*Second exception.* For that the court erred in allowing the plaintiff, under the defendant's objection, to testify to what passed between him and the superintendent, as follows:

Q. And you went to see the superintendent about your letter of 29 August and his reply of 10 September. Tell the jury what passed between you.

A. The superintendent said that in regard to entering into a contract, they did not do such a thing (this is as I understood him to say), and I told him my reasons for it: that I thought there might be some changes around the railroad, as there had been in the past, and I thought best to have a contract, and he said: "We are likely to stay as long as you," and I said that might be true; and he said, "Haven't we always looked out for old employees?" I said, "Yes," and I insisted that·in case I could not run on the short-cut, as my nerves were not right and I would want to be on the safe side, that they give me something else to do, and he said to the manager, "Isn't there going to be a light run put on to Fayetteville, and maybe that will suit Mr. Wacksmuth?" And I said maybe it would; that all I wanted was something in case I couldn't run, so I would have something to do; and he said, "Go back, and don't work until you feel stronger, and put in your application for this run, and we will look out for you," and I said, "I am going to have my relief check signed," and I think I also signed for my watch, pin, etc.

Q. What did he do that first thing? A. He touched me and said, "Go back," they would look out for me; and the manager said he knew I was a good workman, that he had passed through the shops and seen me at work, and he knew I was a good workman, and he left me with the impression——

Q. He told you that they would care for you, and he said they always took care of old men. The last thing he said to you was that you were to go back and they would take care of you, and you went and cashed those checks? A. Yes; I went from there down to Mr. B.'s office, an architect in Wilmington, and told him what I had done.

This exception is upon the ground that the same is irrelevant and incompetent, for that (1) it does not constitute any promise or agreement which is sufficiently explicit to make the basis of a contract, and (2) it contradicts by parol the express terms and provisions of a written contract, and should have been excluded.

*Third exception.* For that the court erred in allowing the plaintiff, in answer to his counsel's question, "Why did you

cash the relief checks?" to state, under defendant's objection, that it was "with the promise that they would look out for me."

This exception is upon the ground that the question and answer are both irrelevant and incompetent, in that they contradict by parol the express terms of the written contract or agreement.

*Fourth exception.* For that the court erred in refusing to give the special instruction, numbered 1, asked for by the defendant, as follows:

"The defendant prays the court to instruct the jury that there is no evidence that plaintiff was induced by the defendant to accept the relief benefits."

This exception is upon the ground that there was no such evidence, and the court should have so instructed the jury.

*Fifth exception.* For that the court erred in refusing to give the special instruction, numbered 5, asked for by the defendant, as follows:

"Before you can answer the issue, Was plaintiff induced to accept the benefits by the defendant? you must find the facts from the evidence that the defendant knowingly, purposely offered and agreed to give plaintiff indefinite employment, and that this was done to induce him to accept the benefits and release his right of action. There is no evidence of this, and you are instructed to answer the issue 'No.' "

This exception is upon the ground that the instruction asked for was a correct statement of the matter necessary to be found before the issue could be answered in favor of the plaintiff, and that there was no evidence upon which said finding could be based, and the instruction should have been given.

*Sixth exception.* For that the court erred in using the following language in the general charge to the jury, to wit:

"If you find as a matter of fact that the plaintiff went to Wilmington, and the general superintendent promised and agreed and said to him that if he would go back and not sue the company that he would see that he was taken care of and would be given such work as he would be able to do, and that by reason of these representations he did cash his checks, then I charge you that that would be such an inducement, and you

ought to answer the third issue 'Yes'; but if, on the other hand, they did not induce him to, or did not intend to induce him to cash those checks, but that he did it voluntarily or without promises, then you should answer that issue 'No.' Upon this issue the burden is on the plaintiff. What is meant by the burden is that the evidence of one party outweighs the evidence of the other; in other words, if upon this issue the evidence is equally balanced, then the answer would be against the plaintiff, because the plaintiff has the burden of the issue. If the testimony of the plaintiff outweighs or bears down the evidence of the defendant, then he is said to have carried the burden, and it would be your duty to answer this issue 'Yes.' "

This exception is upon the ground that there was no evidence offered by the plaintiff from which such a finding of fact as is contemplated in that part of the charge quoted could have been made.

*Seventh exception.* For that the court erred in refusing to grant the defendant's request for judgment of nonsuit at the close of the plaintiff's evidence, and again at the close of all the evidence.

*H. A. Gilliam and L. V. Bassett for plaintiff.*
*F. S. Spruill for defendant.*

ALLEN, J., after stating the case: An examination of the record shows that no exception was taken to the answer of the witness embraced in the first assignment of error. The objection was to the question, and it was clearly competent to ask the plaintiff as to the extent of his injuries, and for him to state how much he suffered; and if the defendant thought the answer was not responsive, it was its duty to move to strike it out.

This is fair to the judge and the parties, as it gives an opportunity to correct any error that has been committed; and the judge may well conclude when objection is made to a question, which is proper, and none to the answer, that it is not regarded of sufficient importance to note an exception, or that it is unobjectionable.

"Defendant's remedy was to promptly move to strike out the objectionable testimony, and by the failure of its counsel to adopt this course, any and all right which the defendant may have had to object thereto was waived." 8 Ency. of Pl. and Pr., p. 134.

The remaining assignments, as indicated in the brief of the appellant, are intended to present three questions:

(1) The plaintiff having admitted that he accepted benefits, is it competent to prove by parol that he was induced to do so by the promise of the defendant?

(2) If such evidence is competent, was the evidence introduced by the plaintiff sufficient to sustain a finding that the promise was made?

(3) If the promise was made, would it relieve the plaintiff from the legal effect of the acceptance of the benefit?

The term "benefits," as used in the regulations of the department, has a definite meaning, and does not include hospital treatment and medical attention, and it is the acceptance of benefits, not the agreement to do so, which under certain conditions may bar a recovery. The acceptance of the benefit is an act of the party, which is not evidenced by any writing, and when its effect is in dispute, it is competent to show the circumstances connected with it.

It is in this respect that *Aderholt v. R. R.,* 152 N. C., 411, and *Von Norstrand v. R. R.,* 67 Kan., 387, are distinguishable from the case at bar, as in each of those cases there was a written release.

We think the evidence was competent, and that it was sufficient to be submitted to the jury on the third issue.

There was evidence that the plaintiff received the checks for benefits; that he wrote the superintendent of the defendant and submitted a proposition of settlement, which included future employment, and said he would release the defendant if it would give him this employment; that the superintendent invited him to see him in order that they might talk the matter over; that he went and that in the conversation the superintendent said that "in regard to entering into a contract, they did not do such a thing (this is as I understood him to say),

and I told him my reason for it: that I thought there might be
some changes around the railroad, as there had been in the
past, and I thought it best to have a contract; and he said,
'We are likely to stay as long as you,' and I said, 'That might
be true,' and he said, 'Haven't we always looked out for old
employees?' I said, 'Yes,' and I insisted that in case I couldn't
run on the short-cut, as my nerves were not right and I would
want to be on the safe side, that they give me something else
to do; and he said to the manager, 'Well, isn't there going to be
a light run put on to Fayetteville, and maybe that will suit Mr.
Wacksmuth?' And I said maybe it would; that all I wanted
was something in case I couldn't run, so I would have something
to do; and he said, 'Go back, and don't go to work until you
feel stronger, and put in your application for this run, and we
will look out for you,' and he said, 'You go back to Rocky
Mount and we will look out for you,' and I said, 'I am going to
have my relief checks signed,' and I think I also signed for my
watch, pin, etc. He touched me and said, 'Go back,' that they
would look out for me," and that, relying on what was said
to him, he then collected the benefit checks, and this, if believed,
justified the jury in answering the third issue "Yes."

The charge of his Honor is not set out, but as there is no
exception to it, we must assume that he fully explained to the
jury the significance of the issue, and the bearing of the evi-
dence.

If the evidence was competent and was sufficient to sustain
the verdict, does the acceptance of benefits, induced by the prom-
ise of the defendant, which it failed to perform, bar a recovery?

In the consideration of this question, it must be remembered
that the defendant is not relying on the promise.

It does not say that the plaintiff has accepted a new promise
of future employment in satisfaction of his claim for damages,
and therefore he must declare for breach of the promise, but,
on the contrary, it says no promise was made.

It seems to us that a fair interpretation of the verdict is con-
clusive against the defendant, on the principles declared in
*King v. R. R., post,* 44.

The jury has found that there was a contract between the plaintiff and the defendant, and that by its terms the plaintiff agreed to release the defendant from claims for damages on account of negligence, upon payment to him of the benefits and giving him employment, and that the defendant has broken the contract. If so, the acceptance of the benefits did not constitute the settlement, but an act done in furtherance of it. *Dalrymple v. Craig,* 70 Mo. App., 155.

The contract must be considered as a whole, and if treated as an accord and satisfaction or as a contract with dependent stipulations, the defendant must show performance in order to rely on it.

Our views, as to the controlling principles when an accord and satisfaction is pleaded, are stated in the *King case,* and it is unnecessary to repeat them.

It is also well settled that "one relying on a contract of compromise and settlement calling for the performance by him of certain acts, must show a performance of the conditions imposed on him by such agreement." 8 Cyc., 534.

This is declared to be the law in *Quarles v. Jenkins,* 98 N. C., 261, where the Court says: "The court, therefore, properly instructed the jury, in effect, that if the settlement alleged was to be final, on conditions to be observed and performed on the part of the defendant, and he failed to observe and perform the same according to the terms as agreed upon between the parties, then there was no such settlement and discharge."

The case of *Armistead v. R. R.,* 108 La. Ann., 173, is in principle like this. There the plaintiff's boat was injured by the negligence of the defendant, and he brought an action to recover damages. The defendant pleaded a compromise and settlement, and it was held that the plea was not good because it had promised to furnish a steamboat and had failed to do so, the Court saying: "The defendant violated the compromise, and then voluntarily canceled it, and is, therefore, not in a position to plead it in bar of plaintiff's action."

We conclude that the plaintiff was entitled to judgment upon the verdict.

---

KING *v.* R. R.

---

On the trial, the plaintiff offered to return the amount he received as benefits.

This was proper, and the defendant is entitled to have this sum credited on the judgment recovered.

We find

No error.

CLARK, C. J., concurs in the result upon the ground that the contract of the plaintiff with the so-called relief department is denounced as null and void by the provisions of the State statute, Rev., 1646 (the Fellow-servant Act), and also by section 5 of the Federal Employer's Liability Act of 22 April, 1908, and refers to his concurring opinion in *King v. R. R., post,* 66.